```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF GEORGIA
                      ATLANTA DIVISION

UNITED STATES OF AMERICA,        *
                                 *
     Plaintiff,                  *
                                 *   CIVIL ACTION
          v.                     *
                                 *   NO. 1:08-CV-0113-CC
$33,330.00 IN UNITED STATES      *
CURRENCY and TEN PIECES OF       *
JEWELRY VALUED AT $27,750.00,    *
                                 *
     Defendants.                 *
```

**PLAINTIFF'S NOTICE OF OBJECTION TO AFFIDAVIT OF TONY AYOOLA**

**STATEMENT OF FACTS**

On September 18, 2009, Plaintiff filed its Motion for Summary Judgment in the above-captioned case. [Doc 29]. On November 2 and November 9, 2009, Claimant Tony Kayode Ayoola ("Claimant") filed a response to Plaintiff's summary judgment motion and a motion to suppress evidence that law enforcement officers seized from his residence on August 1, 2007.[1]  [Doc 40; Doc 41; Doc 49; Doc 50]. On November 2, 2009, Claimant also filed, allegedly in support of his response to Plaintiff's motion for summary judgment and in support of his motion to suppress, a document purporting to be an affidavit ("the Affidavit") of Claimant.  [Doc 42].

---

[1] Claimant filed his Motion to Suppress and his response to Plaintiff's motion for summary judgment on November 2, 2009 but did not file his Brief in Support of the motion to suppress and his response until November 9, 2009, after the Court granted his Request for Leave to File Conventionally. [Doc 40; Doc 41; Doc 45; Doc 47; Doc 49; Doc 50].

The United States hereby asserts its objection[2] to the admission into evidence of paragraphs six, seven, eight, ten, and eleven of the Affidavit, on the grounds that those paragraphs contradict Claimant's prior sworn testimony and are submitted in order to create a false issue of material fact to defeat summary judgment and to add a non-existent fact in support his motion to suppress.

## ARGUMENT AND CITATION OF AUTHORITY

Federal Rule of Civil Procedure 56(e) allows parties to support a motion for summary judgment or a response to such motion with evidence in the form of affidavits.  That Rule states, in pertinent part, that "[a] supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(e)(1).

**(A)  The document is a "sham" affidavit intended to create a false issue of material fact to defeat summary judgment and to add a non-existent fact in support of Claimant's motion to suppress.**

The Eleventh Circuit has long held that a party opposing summary judgment may not submit affidavits as "evidence" to try to

---

[2]In this district, a notice of objection, rather than a motion to strike, is "the proper vehicle for challenging the admissibility of evidence set forth in an affidavit." Smith v. Life Ins. Co. of North America, 466 F.Supp.2d 1275, 1283 (N.D. Ga. 2006).

create an issue of material fact where none truly exists.  "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Van T. Junkins and Assoc. v. U.S. Industries, 736 F.2d 656, 657 (11th Cir. 1984).  Such affidavits are known as "sham" affidavits, and may be disregarded as such by the Court.  Akins v. Fulton County, Georgia, 2008 U.S. App. LEXIS 11214 at *8 (11th Cir. May 22, 2008)(citing Junkins, id.); United States v. $715,031.27 Seized from Wachovia Bank Numbers x-3397, 587 F.Supp.2d 1275, 1278 (N.D. Ga. 2008) (finding an affidavit that was in direct contradiction to the claimant's sworn deposition testimony to be a "sham affidavit" and disregarding it in considering the government's motion for summary judgment because "no explanation was provided explaining why this new statement is in direct contradiction to his previous sworn testimony").

In the Affidavit at issue here, the Claimant swears to statements that are in direct contradiction of his prior sworn testimony given at his deposition on July 2, 2009.  Claimant is in fact attempting to create a false issue of material fact where none truly exists and to add non-existent facts in order to support his claim that the initial protective sweep of his residence was

3

unconstitutional and that all evidence seized from the residence should be suppressed.

Specifically, the contradictory statements in the document are as follows:

Affidavit Paragraph 6: "On the morning of August 1, 2007, after being up all night with Ms. Jones, I was asleep when I was awakened by the sound of my telephone ringing and a voice on a bullhorn telling me that the police were outside and that I needed to come out of my home." [Doc 42, ¶ 6]. Yet, in his sworn deposition testimony, Claimant testified as follows:

Q. According to the police report, the police report says that after the police arrived, they made several attempts to call you. Do you know how may times they tried calling you?

A. No, sir. Like I said, I just woke up to the phone ringing profusely, like repeatedly over and over and over. Not that many people have my home phone. A few have my cellular phone because of my business, what have you and whatnot [sic], but not that many people have my home number. And it was ringing over and over. The numbers, I didn't know the numbers. I looked at the caller ID. And after that, a little short while, I heard the officer on the PA system. The horn telling me, you know, he wanted me to come out. He just wanted to talk to me or what have you or what not.

[Doc 31, p. 93, line 18 through p. 94, line 9]. Thus, according to his prior sworn testimony, Claimant was <u>not</u> awakened by a voice on the bullhorn; he had already been awake for "a little short while" before he heard the bullhorn. Furthermore, in his response to Plaintiff's Statement of Material Facts, Claimant states that "he

4

awoke when he heard the telephone ringing, followed by a voice on a bullhorn."  [Doc 51 at p. 5, ¶ 14].

Affidavit Paragraphs 7 and 8 :  "After waking, I called my mother telling her what I had heard and asking her what I should do, and she advised that I should exit my home peacefully and find out what the police wanted.  My telephone conversation with my mother did not last more than two or three minutes and I exited the residence."  [Doc 43, ¶¶ 7-8].  Yet, in his deposition, Claimant testified under oath as follows:

A. And that's when I called my mother.  And as soon as she directed me to go ahead and go out and see what they wanted and what the situation is, that's when I went outside.  Because at that point, I didn't even know that Ms. Jones was still not in the house.  I knew she left, but I assumed that she had came [sic] back.  Because my mother even asked me, she was like, "Where's Felishyia," and I was like, "I don't know where she is," you know.  And I called her name and looked around the house, and she was gone.

[Doc 31, p. 94, lines 11-21].  Thus, according to his previous sworn testimony, Claimant looked around the house for Ms. Jones before going outside rather than exiting the house immediately after ending his alleged telephone call with his mother.

Affidavit Paragraph 10:  "There are no other windows or doors on the side of the home through which I exited."  [Doc 42, ¶ 10].  At his deposition, Claimant testified under oath as follows:

Q:   Are there windows on the side of the house?

5

A:   Yes, there's a window on the side of the house, but there's only one window in particular on the back of the house, and it's three stories up.

[Doc 31, p. 97, lines 8-12].  Moreover, the photographs taken at Claimant's residence show that there is in fact at least one window on the side of the house through which he exited.  See [Exhibit 1 to Doc 31].  Claimant testified that he exited the house through a side door, which is shown in a photograph as being located next to a motorcycle parked on a patio area or driveway.  [Doc 31, p. 40, lines 19-25; p. 102, lines 10-17; Exhibit 1 to Doc 31].  A separate photograph shows the rear license tag of a Mercedes Benz SUV parked in the same area, and the same motorcycle can be seen in the background of the photograph, several feet away from the vehicle.  [Exhibit 1 to Doc 31].  A third photograph, taken from the front of the Mercedes Benz SUV and looking toward the house, clearly shows that there is at least one window on that side of the residence.  [Exhibit 1 to Doc 31].

Affidavit Paragraph 11:  "At the time I exited the house, I closed the door behind me."  At his deposition, however, Claimant testified under oath that he came out of the house with his "hands up," and thus he could not have closed the door.  Specifically, Claimant first testified as follows:

A:   So I went outside with my hands up.  And at that point SWAT Team came down and secured me, and then I was placed in a vehicle and immediately taken away from the home.

[Doc 31, p. 87, lines 22-25]. Later, Claimant testified as follows:

A:  And I went immediately outside and turned myself in to the police. I had my hand up and I had a Bible in my other hand to be exact, you know, when I came and laid on the ground and what have you on the driveway.

[Doc 31, p. 98, line 24 through p. 99, line 4]. Finally, Claimant testified as follows:

A:  I just came out of the house with my hands up.

[Doc 31, p. 101, lines 13-14]. Clearly from his sworn deposition testimony, Claimant exited the house with his hands up and could <u>not</u> have closed the door. This is important because Officer Foster and Officer Davis each testified under oath at their depositions that they smelled the odor of marijuana coming from the open door, thereby giving them probable cause to conduct a protective sweep of the residence. [Doc 55, p. 24, lines 18-22; p. 45, lines 4-19; Doc 56, p. 25, lines 2-9; p. 33, lines 21-25; p. 37, lines 9-17]. Claimant is now attempting to add the non-existent fact that the door was closed after he exited the house, when in fact it was open, in an attempt to make it appear that law enforcement officers illegally entered his home without probable cause and exigent circumstances to conduct a protective sweep.

As clearly shown above, Claimant's sworn statements in the Affidavit he submitted as "evidence" in support his response to

Plaintiff's motion for summary judgment and in support of his motion for summary judgment are in direct contradiction to unambiguous sworn statements that Claimant gave in his deposition testimony.  His statements in the Affidavit make no attempt to clarify or explain his previous sworn testimony; rather, they are bald contradictory statements whose only conceivable purposes are to attempt to create a false issue of material fact to avoid summary judgment and to make it appear that the officers violated his Fourth Amendment rights.  Thus, this Court should rule that the Affidavit is inadmissible into evidence in this case.  $715,031.27 Seized from Wachovia Bank Numbers x-3397, 587 F.Supp.2d at 1278.

## CONCLUSION

For all of the reasons set forth above, Claimant's Affidavit should not be admitted into evidence or considered by the Court in ruling on Plaintiff's Motion for Summary Judgment and on Claimant's Motion to Suppress.

This 23rd day of November, 2009.

          Respectfully Submitted,

          SALLY QUILLIAN YATES
          ACTING UNITED STATES ATTORNEY

          /s/ Michael J. Brown
          MICHAEL JOHN BROWN
          ASSISTANT UNITED STATES ATTORNEY
          Georgia Bar Number 064437

600 UNITED STATES COURTHOUSE
75 SPRING STREET, S.W.
ATLANTA, GA  30303
Telephone:  (404) 581-6000
Fax: (404) 581-6181

**CERTIFICATE OF SERVICE**

I hereby certify that I have prepared the foregoing **PLAINTIFF'S NOTICE OF OBJECTION TO AFFIDAVIT OF TONY AYOOLA** in compliance with Local Rule 5.1, NDGa., using Courier New 12 point type and have this day electronically filed the document with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

```
      Bruce Morriss
      Daniel Shim
```

This 23rd day of November, 2009.

```
                    /s/ Michael J. Brown
                    MICHAEL JOHN BROWN
                    ASSISTANT U.S. ATTORNEY
                    Georgia Bar No. 064437
```